**MEYER LAW GROUP LLP**
  A Limited Liability Partnership
BRENT D. MEYER, Cal. Bar No. 266152
268 Bush Street #3639
San Francisco, California 94104
Telephone:   (415) 765-1588
Facsimile:    (415) 762-5277
Email:        brent@meyerllp.com

Attorneys for Plaintiff
JEFFREY GEORGE DRAGER

**CALLAHAN & BLAINE, APLC**
  A Professional Law Corporation
DANIEL J. CALLAHAN, Cal. Bar No. 91490
EDWARD SUSOLIK, Cal. Bar No. 151081
BRETT E. BITZER, Cal. Bar No. 264736
3 Hutton Centre Drive, Ninth Floor
Santa Ana, California 92707
Telephone:   (714) 241-4444
Facsimile:    (714) 241-4445
Email:        bbitzer@callahan-law.com

Attorneys for Plaintiff
PROMAX BUILDERS, INC.
*dba* PRO CRAFT BUILDERS

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| In re | BK Case No.: 19-52499-MEH |
| JEFFREY GEORGE DRAEGER, | Chapter 11 |
|     Debtor in Possession. | |
| | |
| JEFFREY GEORGE DRAGER, an individual; and PROMAX BUILDERS, INC. *dba* PRO-CRAFT BUILDERS, a California corporation, | AP Case No.: _____ |
|     Plaintiffs, | **ORIGINAL COMPLAINT FOR:** |
|     v. | 1.  **Unfair Business Practices (Violation of California Business & Professions Code §§ 17200-17208)** |

- 1 -

MEYER LAW GROUP LLP
268 BUSH STREET #3639
SAN FRANCISCO CA 94104
w w w . m e y e r l l p . c o m

Case: 20-05032   Doc# 1   Filed: 06/08/20   Entered: 06/08/20 22:24:24   Page 1 of 51

| | |
|---|---|
| 1 | WBL CALIFORNIA, LLC, a California limited liability company; WORLD BUSINESS LENDERS, LLC, a New York limited liability company; and WBL SPE III, LLC a Delaware limited liability company, | **2. Unfair Business Practices (Violation of California Business & Professions Code §§ 17200-17208)** |
| 2 | | **3. Declaratory Relief** |
| 3 | | **4. Avoidance and Recovery of Constructive Fraudulent Transfer (11 U.S.C. § 548(a)(1)(B) and 11 U.S.C. § 550)** |
| 4 | | |
| 5 | Defendants. | **5. Avoidance and Recovery of Constructive Fraudulent Transfer (11 U.S.C. § 544(a)(1) and California Civil Code §§ 3439.04(a)(2) and 3439.07)** |
| 6 | | |
| 7 | | |
| 8 | | **6. Avoidance and Recovery of Constructive Fraudulent Transfer (11 U.S.C. § 544(b)(1) and California Civil Code §§ 3439.05 and 3439.07)** |
| 9 | | |
| 10 | | **7. Objection to Claim (11 U.S.C. § 502)** |
| 11 | | **8. Avoidance of Lien (11 U.S.C. § 506(d))** |

Plaintiffs JEFFREY GEORGE DRAGER ("Draeger") and PROMAX BUILDERS, INC. *dba* PRO-CRAFT BUILDERS ("ProMax") (collectively, "Plaintiffs") hereby bring this adversary proceeding against defendants WBL CALIFORNIA, LLC ("WBL CA"), WORLD BUSINESS LENDERS, LLC ("WBL LLC"), and WBL SPE III, LLC ("WBL SPE") (collectively, "Defendants") and alleges as follows:

## JURISDICTION AND VENUE

1.      Jeffrey George Draeger is the debtor and debtor in possession in a case filed under Title 11, Chapter 11 of the United States Code on December 12, 2019, which is currently pending before the United States Bankruptcy Court, Northern District of California, San Jose Division, Case Number 19-52499-MEH (the "Bankruptcy Case").

2.      This Court has subject matter jurisdiction over these proceedings pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(a), as this adversary proceeding arises in, arises under, and/or relates to the Bankruptcy Case filed by Draeger.

3.      This is a core proceeding in the Bankruptcy Case over which this Court has jurisdiction pursuant to 28 U.S.C. §§ 157(b)(2)(B), (b)(2)(H), (b)(2)(K), and (b)(2)(O), such that this Court has jurisdiction to hear and determine this proceeding and to enter an appropriate



MEYER LAW GROUP LLP
268 BUSH STREET #3639
SAN FRANCISCO CA 94104
www.meyerllp.com

AP CASE NO.

ORIGINAL COMPLAINT

order and judgment. To the extent necessary, Draeger and ProMax each consent to entry of a final order or judgment by this Court pursuant to Bankruptcy Local Rule 7008-1.

4. Venue is proper in this district because the Bankruptcy Case is currently pending in United States Bankruptcy Court, Northern District of California, San Jose Division.

## PARTIES

5. Jeffrey George Draeger ("Draeger") is an individual, and at all relevant times, was domiciled in San Jose, California in Santa Clara County, and is debtor in the Bankruptcy Case.

6. Promax Builders, Inc. is a California corporation *doing business as* Pro-Craft Builders ("ProMax") and at all relevant times, had its principal place of business in Fremont, California in Alameda County.

7. Plaintiffs are informed and believe and thereupon allege that WBL California, LLC ("WBL CA") is a California limited liability company, and at all relevant times, had its principal place of business in Costa Mesa, California.

8. Plaintiffs are informed and believe and thereupon allege that World Business Lenders, LLC ("WBL LLC") is a New York limited liability company, and at all relevant times, had its principal place of business in Jersey City, New Jersey.

9. Plaintiffs are informed and believe and thereupon allege that WBL SPE III, LLC ("WBL SPE") is a Delaware limited liability company, and at all relevant times, had its principal place of business in Jersey City, New Jersey.

10. At all times herein relevant, all Defendants, and each of them, were the agents, servants, and/or employees of each and every other defendant. Defendants carried out a joint scheme, business plan, or policy in all respects pertinent hereto and all acts and omissions herein complained of were performed within the course and scope of said employment, service, agency, common scheme, plan, and/or policy. Unless otherwise stated, each allegation as to one Defendant is an allegation as to all Defendants.

11. Defendants, and each of them, was the principal, agent (actual or ostensible), co-conspirator, or employee of each other and in acting as such principal or within the course and scope of such employment, agency, or conspiracy, took some part in the acts and omissions

MEYER LAW GROUP LLP

268 BUSH STREET #3639
SAN FRANCISCO CA 94104
www.meyerllp.com

AP CASE NO.

ORIGINAL COMPLAINT

Case: 20-05032    Doc# 1    Filed: 06/08/20    Entered: 06/08/20 22:24:24    Page 3 of 51

hereinafter set forth by reason of which each Defendant is liable to Plaintiffs for the relief prayed herein.

<b><u>GENERAL ALLEGATIONS</u></b>

12.     In order to obtain a short-term bridge loan, on or about February 11, 2019, ProMax executed a *Business Promissory Note and Security Agreement* (the "<u>Promissory Note</u>"), in which ProMax obtained a loan from WBL CA in the principal amount of Seven Hundred and Fifty Thousand Dollars ($750,000) (the "<u>Loan</u>"), a true and correct copy of which is attached hereto as **Exhibit A** and incorporated herein by reference.  The entire principal amount of the Loan ($750,000) was provided directly to ProMax, and Draeger did not personally receive any proceeds of the Loan.

13.     In order to obtain the Loan, WBL CA required that all shareholders of ProMax personally guaranty the Loan, and on or about February 11, 2020, Draeger, Michael Yin, and Marcella Anne Mance each executed a *Continuing Guaranty (Unlimited)*, a true and correct copy of which is attached hereto as **Exhibit B** and incorporated herein by reference (the "<u>Personal Guarantees</u>").  The Personal Guarantees were not secured by any collateral.

14.      As further assurances of ProMax's performance of its obligations pursuant to the terms and conditions of the Promissory Note, and in order to obtain the Loan, WBL CA also required that Draeger personally grant WBL CA deeds of trust secured by his interest in residential real property commonly known as: (a) 1017 Vista Del Mar, San Jose, California 95132 (the "<u>Vista Del Mar Property</u>"); (b) 136 N. 31st Street, San Jose, California 95116 (the "<u>31st Street Property</u>"); and (c) 439 N. 11th Street, San Jose, California 95112 (the "<u>11th Street Property</u>"), a true and correct copy of which is attached hereto as **Exhibit C** and incorporated herein by reference (the "<u>Deeds of Trust</u>").

15.     As of February 11, 2019, Draeger owned a fee simple interest in the Vista Del Mar Property, which was encumbered by a First Priority Deed of Trust in favor of Bank of America, N.A. securing obligations for a *Promissory Note* in the aggregate amount of approximately $507,891.20, and a Second Priority Deed of Trust in favor of Wells Fargo Bank, N.A. securing obligations for a *Home Equity Line of Credit* (HELOC) in the aggregate amount



MEYER LAW GROUP LLP
268 BUSH STREET #3639
SAN FRANCISCO CA 94104
www.meyerllp.com

AP CASE NO.

ORIGINAL COMPLAINT

of $36,578.23.

16.     Plaintiffs are informed and believe and based thereupon allege that as of the date that Draeger executed the Deeds of Trust and granted WBL CA an interest in the Vista Del Mar Property (February 11, 2019), the fair market value for the Vista Del Mar Property was at least $1,600,000, and likely higher.

17.     The Vista Del Mar Property is a single-family residence and contains less than four (4) units.

18.     At all relevant times herein alleged, Draeger and his wife (Faviola Ortiz) occupied and resided in the Vista Del Mar Property as their principal residence.

19.     As of February 11, 2019, Draeger owned a fee simple interest in the 31st Street Property, which was encumbered by a First Priority Deed of Trust in favor of PNC Bank, N.A. secured obligations for a *Promissory Note* in the aggregate amount of approximately $196,584.20.

20.     Plaintiffs are informed and believe and based thereupon allege that as of the date that Draeger executed the Deeds of Trust and granted WBL CA an interest in the 31st Street Property (February 11, 2019), the fair market value for the 31st Street Property was at least $800,000, and likely higher.

21.     At all relevant times herein alleged, Draeger utilized the 31st Street Property as a rental property to generate monthly income.

22.     As of February 11, 2019, Draeger owned a fee simple interest in the 11th Street Property, which was encumbered by a First Priority Deed of Trust in favor of PNC Bank, N.A. secured obligations for a *Promissory Note* in the aggregate amount of approximately $194,754.43.

23.     Plaintiffs are informed and believe and based thereupon allege that as of the date that Draeger executed the Deeds of Trust and granted WBL CA an interest in the 11th Street Property (February 11, 2019), the fair market value for the 11th Street Property was at least $800,000, and likely higher.

24.     At all relevant times herein alleged, Draeger utilized the 11th Street Property as a

MEYER LAW GROUP LLP
268 BUSH STREET #3639
SAN FRANCISCO CA 94104
www.meyerllp.com

AP CASE NO.
ORIGINAL COMPLAINT

rental property to generate monthly income.

25.     At the time that Draeger granted WBL CA the Deeds of Trust to secure the obligations of the ProMax under the Promissory Note, Draeger collectively had an equity cushion of at least $2,254,191.94 in the Vista Del Mar Property, the 31st Street Property, and the 11th Street Property, which was more than three (3) times the principal amount ($750,000) of the Loan, which is summarized as follows:

| | Vista Del Mar Property | 31st Street Property | 11th Street Property |
|---|---|---|---|
| Fair Market Value | $ 1,600,000.00 | $ 800,000.00 | $ 800,000.00 |
| 1st Deed of Trust | $    507,891.20 | $ 196,584.20 | $ 194,754.43 |
| 2nd Deed of Trust | $      36,578.23 | $              0.00 | $              0.00 |
| Net Equity | $ 1,045,530.57 | $ 603,415.80 | $ 605,245.57 |

26.     Notwithstanding the riskless nature of the Loan given Draeger's significant equity cushion ($2,254,191.94) in the Vista Del Mar Property, the 31st Street Property, and the 11th Street Property, which was more than three (3) times the principal amount ($750,000) of the Loan, and in addition to the personal guarantees of each of the shareholders of ProMax, WBL CA also demanded an annual percentage rate (APR) of interest of 72.0465%, which was more than twelve (12) times the market rate of interest for a similar loan secured by the Vista Del Mar Property, the 31st Street Property, and the 11th Street Property.

27.     In furtherance of its scheme to systematically thwart California usury laws, and demand repayment of unconscionable interest from Plaintiffs, WBL CA failed to conspicuously identify the effective annual percentage rate (APR) of interest for the Loan, and instead, elected only to disclosure the daily rate of interest. Specifically, in Section 2 of the Promissory Note, WBL CA merely disclosed the interest rate for the Loan as follows:

> **2.  INTEREST RATE:** The unpaid Principal shall bear interest at the rate of **0.19698630137%** per day until paid in full.

(**Exhibit A**, § 2) (emphasis in original).

28.     WBL CA failed to disclose to Plaintiffs that the annual percentage rate (APR) of interest for the Loan was 72.0465%, and all times relevant herein, Plaintiffs were unaware that

- 6 -

MEYER LAW GROUP LLP
268 BUSH STREET #3639
SAN FRANCISCO CA 94104
www.meyerllp.com

the annual percentage rate (APR) of interest for the Loan was 72.0465%.

29.     In order to ensure recovery of the entire amount of interest required by the terms of the Promissory Note, and to penalize Plaintiffs for even a single missed payment, WBL CA demanded a significant monetary "pre-payment" penalty that was not causally related to any damages that WBL CA would sustain as a result of the default in loan payments. Specifically, Section 4 of the Promissory Note provides in relevant part as follows:

> **4.  PREPAYMENT:** Borrower has the right to prepay the unpaid Principal in full at any time, but may not make partial prepayments (except as required by applicable law). Any prepayment shall include a prepayment charge equal to the greater of (a) fifteen percent (15%) of the amount of the unpaid Principal or (b) the aggregate amount required to be repaid by Borrower to Lender during the Repayment Period reduced by (i) the aggregate amount of any payments made by Borrower to Lender pursuant to Section 3 above prior to the date of such prepayment and (ii) the amount of the unpaid Principal. This prepayment charge is in addition to any interest calculated and accrued in accordance with Section 2 above…. For the avoidance of doubt, as permitted under applicable law, if the Obligations have been accelerated on the happening of an Event of Default, payment of Principal and interest shall be deemed a prepayment for purposes of this Section 4.

(**Exhibit A**, § 4) (emphasis in original).

30.     Pursuant to Section 8(a) of the Promissory Note, an "Event of Default" includes "failure by Borrower to pay any weekly or other payment required by this Loan Agreement when due." (**Exhibit A**, § 8). As a result, on or about March 6, 2019, when ProMax originally defaulted on the Loan by failing to make the weekly payment required by terms and conditions of the Promissory Note, WBL CA immediately penalized Plaintiffs for such default by "accelerating" the Loan and demanding recovery of a "pre-payment" penalty of approximately $390,550.96, which constitutes a punitive charge in excess of 52.07% of the original principal amount ($750,000) of the Loan.

31.     Notwithstanding conveniently identifying Section 4 of the Promissory Note as a "Prepayment Premium," in reality, WBL CA utilized Section 4 and Section 8 of the Promissory Note to penalize Plaintiffs by adding additional amounts to the Loan of not less than $390,550.96 based on a single default in the weekly payment amount ($17,546.94). (**Exhibit A**, §§ 4, 8).

MEYER LAW GROUP LLP
268 BUSH STREET #3639
SAN FRANCISCO CA 94104
w w w . m e y e r l l p . c o m

AP CASE NO.
ORIGINAL COMPLAINT

Case: 20-05032    Doc# 1    Filed: 06/08/20    Entered: 06/08/20 22:24:24    Page 7 of 51

32. Since origination, ProMax has remitted aggregate payments to Defendants of at least $235,124.98 on account of the Loan, which are summarized as follows:

| Payment Date | Payment Amount |
|---|---|
| February 14, 2019 | $  17,546.94 |
| February 21, 2019 | $  17,546.94 |
| February 28, 2019 | $  17,546.94 |
| March 21, 2019 | $  17,546.94 |
| September 6, 2019 | $  20,000.00 |
| September 13, 2019 | $  20,000.00 |
| December 4, 2019 | $ 124,937.22 |
| **TOTAL** | **$ 235,124.98** |

33. As part of its scheme, WBL CA assigned and transferred all of its interest in the Promissory Note and Deeds of Trust to WBL SPE, and on or about July 8, 2019, WBL SPE recorded an *Assignment of Deed of Trust* in the Recorder's Office for Santa Clara County as Document No. 24220488, a true and correct copy of which is attached hereto as **Exhibit D** and incorporated herein by reference.

34. On April 15, 2020, WBL SPE filed a *Proof of Claim* (Claim No. 10-1) in the Bankruptcy Case (the "WBL Proof of Claim"), and as of the Petition Date (December 12, 2019), WBL SPE alleges that the outstanding balance of the Promissory Note was $1,333,029.08, and is secured by the Deeds of Trust on the Vista Del Mar Property, the 31st Street Property, and the 11th Street Property, which pursuant to Attachment 7 of the WBL Proof of Claim, is based on the following alleged amounts:

| Principal | $  728,099.75 |
|---|---|
| Accrued Interest | $  403,215.72 |
| NSF Fees | $  0.00 |
| Prepayment Premium | $  201,713.61 |
| **TOTAL** | **$ 1,333,029.08** |

35. On May 14, 2020, Draeger filed a *Tentatively Approved Combined Plan and Disclosure Statement (May 14, 2020)* [Dkt. No. 64] (the "Plan of Reorganization"), in which an initial hearing on confirmation is currently scheduled for June 25, 2020 in the Bankruptcy Case.
///

MEYER LAW GROUP LLP
268 BUSH STREET #3639
SAN FRANCISCO CA 94104
www.meyerllp.com

## CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17200 *ET SEQ.*

36. California Unfair Competition Law ("UCL") prohibits "unfair competition," which is defined by California Business and Professions Code § 17200 as including "any unlawful, unfair or fraudulent business act or practice."

37. As the California Supreme Court has noted, the UCL's "purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." Kasky v. Nike Inc., 27 Cal.4th 939, 949 (2002). The UCL is broadly worded, leading the California Supreme Court to observe that the UCL "was intentionally framed in its broad, sweeping language, precisely to enable judicial tribunals to deal with the innumerable new schemes which the fertility of man's invention would contrive." Barquis v. Merchants Collection Association, 7 Cal.3d 94, 112 (1972) (citations and internal quotation marks omitted). The UCL contains no express intent, knowledge, or negligence requirement, and therefore has been construed as "impos[ing] strict liability." Searle v. Wyndham Int'l, Inc., 102 Cal.App.4th 1327, 1333 (2002).

38. "Because [California] Business and Professions Code Section 17200 is written in the disjunctive, it establishes three varieties of unfair competition - acts or practices which are unlawful, or unfair, or fraudulent." Podolsky v. First Healthcare Corp., 50 Cal.App.4th 632, 647 (1996).

39. The unlawful prong of Section 17200 proscribes "anything that can properly be called a business practice and that at the same time is forbidden by law." People v. McKale, 25 Cal.3d 626, 632 (1979); see also Podolosky v. First Healthcare Corp., 50 Cal.App.4th at 647 ("Virtually any state, federal or local law can serve as the predicate for an action under Business and Professions Code section 17200."); Saunders v. Superior Court, 27 Cal. App. 4th 832, 838-839 (1994) ("The 'unlawful' practices prohibited by section 17200 are any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made.").

40. The unfair prong of Section 17200 "provides an independent basis for relief"; in other words, "[i]t is not necessary for a business practice to be 'unlawful' in order to be subject to an action under the unfair competition law." Smith v. State Farm Mutual Auto. Ins. Co., 93

MEYER LAW GROUP LLP
268 BUSH STREET #3639
SAN FRANCISCO CA 94104
w w w . m e y e r l l p . c o m

AP CASE NO.
ORIGINAL COMPLAINT

Case: 20-05032   Doc# 1   Filed: 06/08/20   Entered: 06/08/20 22:24:24   Page 9 of 51

Cal.App.4th 700, 718 (2001). "In general the 'unfairness' prong 'has been used to enjoin deceptive or sharp practices.'" <u>South Bay Chevrolet v. Gen. Motors Acceptance Corp.</u>, 72 Cal.App.4th 861, 887 (1999) (citations omitted).

41.     The courts of the State of California have adopted several tests for determining whether a business act or practice is unfair: a business practice is unfair "when that practice 'offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious.'" <u>State Farm Fire & Casualty Co. v. Superior Court</u>, 45 Cal.App.4th 1093, 1102 (1996) (*quoting* <u>People v. Casa Blanca Convalescent Homes, Inc</u>., 159 Cal.App.3d 509, 530 (1984)).

42.     Another "test of whether a business practice is unfair involves an examination of [that practice's] impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer. In brief, the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." <u>State Farm Fire & Casualty Co. v. Superior Court,</u> 45 Cal.App.4th at 1103-04.

43.     It also is an unfair business practice when the defendant's conduct "threatens an incipient violation of [a law], or violates the policy or spirit of [a law] because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." <u>Cel-Tech Commc'n, Inc. v. Los Angeles Cellular Tel. Co</u>., 20 Cal.4th 163, 187 (1999); <u>see</u> <u>also</u> <u>Scripps Clinic v. Superior Court,</u> 108 Cal.App.4th 917, 940 (2003).

44.     More recently, one Court of Appeal has fashioned a test for determining whether a practice is unfair based upon Section 5 of the Federal Trade Commission Act (United States Code, Title 15, Section 41 *et seq*.). Under this test, "[a]n act or practice is unfair if [a] the consumer injury is substantial, [b] is not outweighed by any countervailing benefits to consumers or to competition, and [c] is not an injury the consumers themselves could reasonably have avoided." <u>Daugherty v. Am. Honda Motor Co., Inc</u>., 144 Cal.App.4th 824 (2006) (bracketed letters added).

45.     The fraudulent prong of section 17200 "affords protection against the probability or likelihood as well as the actuality of deception or confusion." <u>Payne v. United Cal. Bank</u>, 23



MEYER LAW GROUP LLP
268 BUSH STREET #3639
SAN FRANCISCO CA 94104
w w w . m e y e r l l p . c o m

Cal.App.3d 850, 856 (1972). "The test is whether the public is likely to be deceived." South Bay Chevrolet v. Gen. Motors Acceptance Corp., 72 Cal.App.4th at 888.

### FIRST CAUSE OF ACTION
**Unfair Business Practices**
**(California Business & Professions Code §§ 17200-17208)**

(By All Plaintiff Against All Defendants)

46.     Plaintiffs reallege and incorporate herein by this reference each of the allegations set forth in Paragraphs 1 through 45 above as if the same were fully set forth at this point.

47.     Defendants have engaged and continue to engage in the illegal and unfair business practice of making loans on terms that are unconscionable under the circumstances at the time they are made and which fail to accurately and fairly represent the characteristics and benefits of the loans. Defendants violated and continue to violate California Business & Profession Code §§ 17200 *et seq*. and California Civil Code § 1670.5, by making loans at rates of interest and on other terms that are unconscionable in light of the financial circumstances of the borrowers.

48.     Defendants' Promissory Note and related disclosure statement relating to Plaintiffs is a form document prepared exclusively by Defendants and presented to Plaintiffs on a take-it-or-leave-it basis. Defendants have grossly disproportionate bargaining power vis-à-vis consumers and dictates the terms of its loans and loan documents. Defendants allow no opportunity for negotiation. The customer must consent to all terms proposed by Defendants in order to obtain a loan from Defendants.

49.     Defendants' Promissory Note and related disclosure statement relating to Plaintiffs is a contract of adhesion.

50.     Defendants lend to borrowers over the Internet, with the borrower at a personal computer, using electronic signatures, document transmittals, and disclosures. Defendants uniformly require borrowers to apply for and execute loan documents electronically. A borrower must have access to a personal computer in order to fill out and transmit the loan application and documentation forms required by Defendants in order to obtain a loan. Defendants do not lend money based on paper transactions.



MEYER LAW GROUP LLP

268 BUSH STREET #3639
SAN FRANCISCO CA 94104
www.meyerllp.com

AP CASE NO.

ORIGINAL COMPLAINT

- 11 -

Case: 20-05032   Doc# 1   Filed: 06/08/20   Entered: 06/08/20 22:24:24   Page 11 of 51

51.     Defendants' Internet presentation to borrowers of the loan application and documentation forms required to obtain a loan, including Defendant's Promissory Note and related disclosure statement, does not allow the borrower a fair opportunity to review the documents, as a borrower would ordinarily have if presented with a loan application and documentation forms in a paper format. Because the forms are presented in a constricted Internet browser window format, consumers do not have a fair opportunity to review the application forms and loan documentation before completing the loan application process. To the extent that Defendants may allow borrowers to print these forms out before completing the application process, Defendants do not conspicuously disclose that option, or require that borrowers do so and read the documents before completing the process.

52.     Plaintiffs were presented with Defendants' Promissory Note and related disclosure statement in small bits and pieces on a computer screen. This presentation does not clearly and conspicuously present the rate of interest, the annual percentage rate (APR), the required disclosures under applicable law, or the term of the loan. A reasonable borrower would not see, register, and understand these provisions due to the limitations of presentation on a computer screen. Plaintiffs did not see, register, and/or understand these features of the loan offered by Defendants.

53.     As a result of Defendants' Internet presentation, Plaintiffs did not register or understand the loan terms and disclosures.

54.     The Internet presentation of Defendants' Promissory Note and related disclosure statement to Plaintiffs is markedly one-sided and presents a distorted picture of the loans offered. Defendants' Internet presentation does not bring home to borrowers that the interest the borrowers must actually pay typically costs three to five times the amount that the borrower actually receives in loan proceeds from Defendants.

55.     Defendants' business practices are unfair because they deceive and mislead borrowers by inducing them to sign a Promissory Note and related disclosure statement through an Internet presentation which is one sided and does not effectively communicate to a reasonable borrower the critical terms of the loan.



MEYER LAW GROUP LLP
268 BUSH STREET #3639
SAN FRANCISCO CA 94104
www.meyerllp.com

AP CASE NO.

ORIGINAL COMPLAINT

- 12 -

56. Plaintiffs were unable to understand the ramifications of Defendants' amortization of the loan, and to realize the full cost and unfairness of the financial obligation Defendants' loans purport to impose on Plaintiffs. As a result of a presentation of loan terms and disclosures in an unconscionable format, Defendants violated California Civil Code § 1670.5.

57. Defendants' practices are further illegal, unfair, and unconscionable business practices because they involve making and collecting loans at exorbitant interest rates on amortization schedules that require borrowers to repay Defendants at least twice the amount borrowed before reducing substantial principal, requiring borrowers to repay Defendants from three to five times the amount of the loan. These practices offend public policy, are unconscionable, oppressive and unscrupulous, and cause substantial injury to borrowers.

58. Defendants consciously target borrowers experiencing serious, if not altogether desperate, financial challenges. Plaintiffs obtained Defendants' loan at exorbitantly high interest rates and on such unfavorable loan terms because, in their financial circumstances, credit alternatives on more favorable terms are not practically available to them in the marketplace. A significant percentage of borrowers default on Defendants' loans, and the percentage of borrowers Defendants pursues through collection efforts is extremely high.

59. The harm suffered by Plaintiffs as a result of the extraordinarily oppressive nature of Defendants' loan terms greatly outweighs what value, if any, they receive as a result of the initial loan offered by Defendants.

60. Defendants' practices are further illegal, unfair, and unconscionable because Defendants engage in predatory lending practices including, but not limited to, the use of high pressure sales tactics and failing to consider a borrower's ability to repay a loan.

61. The loans made to Plaintiffs are void and not enforceable because they are unlawful, unfair, and unconscionable in violation of California Civil Code § 1670.5 and California Business & Professions Code §§ 17200 *et seq.*

62. In making and administering their loan to Plaintiffs, Defendants willfully violated California Civil Code § 1670.5.

63. Further, in making the loan to Plaintiffs, Defendants made loans beyond their



MEYER LAW GROUP LLP
268 BUSH STREET #3639
SAN FRANCISCO CA 94104
www.meyerllp.com

AP CASE NO.

ORIGINAL COMPLAINT

financial ability to pay in the time and manner provided in the Promissory Note and related disclosure statement, in violation of 10 C.C.R. § 1452, a regulation promulgated under the California Finance Lenders Law, pursuant to California Financial Code § 22150, which states, "[w]hen making or negotiating loans, a finance company shall take into consideration, in determining the size and duration thereof, the financial ability of the borrowers to repay the same, to the end that the borrowers should be reasonably to repay said loans in the time and manner provided in the loan contracts." 10 C.C.R. § 1452.

64.   In making and administering their loans to Plaintiffs, Defendants willfully violated California Financial Code § 22150 and 10 C.C.R. § 1452.

65.   As a result of these violations and unfair business practices, Plaintiffs suffered injury in fact and lost money and property, including but not limited to payments of interest and other charges collected by Defendants on loans made in violation of these laws.

66.   Pursuant to California Business and Professions Code section 17200 *et seq*., Plaintiffs are entitled to enjoin the practice of making unconscionable loans and of harassing debt collection, and to obtain restitution of all funds obtained by Defendants by reason of and through the use of these unlawful, unfair, or fraudulent acts and practices.

## SECOND CAUSE OF ACTION
### Unfair Business Practices
### (California Business & Professions Code §§ 17200-17208)

(By Plaintiff Jeffrey George Draeger Against All Defendants)

67.   Plaintiffs reallege and incorporate herein by this reference each of the allegations set forth in Paragraphs 1 through 66 above as if the same were fully set forth at this point.

68.   California Civil Code § 2954.9(b) provides in relevant part:

"Except as otherwise provided in Section 10242.6 of the Business and Professions Code, the principal and accrued interest on any loan secured by a mortgage or deed of trust on owner-occupied residential real property containing only four units or less may be prepaid in whole or in part at any time but only a prepayment made within five years of the date of execution of such mortgage or deed of trust may be subject to a prepayment charge and then solely as herein set forth. An amount not exceeding 20 percent of the original principal amount may be prepaid in any 12-month period without penalty. A prepayment charge may be imposed on any



MEYER LAW GROUP LLP
268 BUSH STREET #3639
SAN FRANCISCO CA 94104
www.meyerllp.com

amount prepaid in any 12-month period in excess of 20 percent of the original principal amount of the loan which charge shall not exceed an amount equal to the payment of six months' advance interest on the amount prepaid in excess of 20 percent of the original principal amount."

69.    Section 4 of the *Promissory Note* provides:

"Any prepayment shall include a prepayment charge equal to the greater of (a) fifteen percent (15%) of the amount of the unpaid Principal or (b) the aggregate amount required to be repaid by Borrower to Lender during the Repayment Period reduced by (i) the aggregate amount of any payments made by Borrower to Lender pursuant to Section 3 above prior to the date of such prepayment and (ii) the amount of the unpaid Principal. This prepayment charge is in addition to any interest calculated and accrued in accordance with Section 2 above."

<u>See</u> **Exhibit A**, § 4.

70.    As set forth in Paragraphs 15 and 18 of this Complaint, at all times relevant herein, Draeger owned a fee simple interest in the Vista Del Mar Property, and along with his wife (Faviola Ortiz), Draeger occupied the Vista Del Mar Property as his principal residence.

71.    As set forth in Paragraph 14 of this Complaint, Defendants secured ProMax's obligations under the Promissory Note, with among other things, the Deeds of Trust secured by the Vista Del Mar Property.

72.    As the Ninth Circuit Court of Appeals has recognized, California Civil Code § 2954.9(b) specifically "limit[s] prepayment penalties to six months; advanced interest on 80 percent of the loan." <u>Ansley v. Ameriquest Mortg. Co.</u>, 340 F.3d 858, 861 (9th Cir. 2003). Further, "[s]ection 2954.9 is a consumer protection statute, intended to protect borrowers in residential mortgage or deed of trust transactions. Accordingly, the statute should be liberally construed to promote that protection, if such a construction does not contradict the plain language of the statute or lead to absurd results." <u>Garver v. Brace</u>, 47 Cal. App. 4th 995, 1002 (1996) (citations omitted).

73.    The formula for the applicable pre-payment penalties set forth in Section 4 of the Promissory Note grossly exceed those limitations set forth in California Civil Code § 2954.9(b).

74.    In making and administering the loan to Plaintiffs, which among other things, included a Pre-Payment Penalty in an amount significantly higher than the maximum amount



MEYER LAW GROUP LLP
268 BUSH STREET #3639
SAN FRANCISCO CA 94104
www.meyerllp.com

AP CASE NO.

ORIGINAL COMPLAINT

- 15 -

Case: 20-05032    Doc# 1    Filed: 06/08/20    Entered: 06/08/20 22:24:24    Page 15 of 51

allowed by California law, Defendants willfully violated California Civil Code § 2954.9(b).

75. As a result of these violations and unfair business practices, Plaintiffs suffered injury in fact and lost money and property, including but not limited to, payments of interest and other charges collected by Defendants on the loan made in violation of these laws.

76. Pursuant to California Business and Professions Code section 17200 *et seq*., Plaintiffs are entitled to enjoin the practice of attempting to collect unconscionable and illegal pre-payment penalties, and to obtain restitution of all funds obtained by Defendants by reason of and through the use of these unlawful, unfair, or fraudulent acts and practices.

### **THIRD CAUSE OF ACTION**
**Declaratory Relief**

(By All Plaintiff Against All Defendants)

77. Plaintiffs reallege and incorporate herein by this reference each of the allegations set forth in Paragraphs 1 through 76 above as if the same were fully set forth at this point.

78. California Civil Code § 1670.5(a) provides that:

"If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."

79. California Civil Code § 1671(b) provides that:

"[A] provision in a contract liquidating the damages for the breach of the contract is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made."

80. Section 4 of the Promissory Note provide that:

"[I]f the Obligations have been accelerated on the happening of an Event of Default, payment of Principal and interest shall be deemed a prepayment for purposes of this Section 4."

<u>See</u> **Exhibit A**, § 4.

///


MEYER LAW GROUP LLP
268 BUSH STREET #3639
SAN FRANCISCO CA 94104
www.meyerllp.com

81.     Section 8(a) of the Promissory Note provides that:

> "On the happening of any of the following events (each an "Event of Default") …
> failure by Borrower to pay any weekly or other payment required by this Loan
> Agreement when due."

See **Exhibit A**, § 8(a).

82.     As set forth in WBL Proof of Claim, Defendants seek recovery of at least
$201,713.61 on account of the "Prepayment Premium," and once a full audit has been performed
on the amounts set forth in the WBL Proof of Claim, it is likely that the WBL Proof of Claim
seeks recovery of significantly more monies on account of the Pre-Payment Penalty set forth in
Section 4 of the Promissory Note. See Claim No. 10-1, p. 2. Defendants seek recovery of this
Pre-Payment Penalty based on Plaintiffs' failure to pay the weekly obligations due and owing,
which Defendants have construed as an "Event of Default" pursuant to Section 8(a) of the
Promissory Note.

83.     Under California law, "[a] liquidated damages clause will generally be considered
unreasonable, and hence unenforceable under section 1671(b), if it bears no reasonable
relationship to the range of actual damages that the parties could have anticipated would flow
from a breach." Ridgley v. Topa Thrift & Loan Ass'n, 17 Cal. 4th 970, 977 (1998). "The
amount set as liquidated damages 'must represent the result of a reasonable endeavor by the
parties to estimate a fair average compensation for any loss that may be sustained.'" Id.
(citations omitted). "'In the absence of such relationship, a contractual clause purporting to
predetermine damages 'must be construed as a penalty.'" Id. "'A penalty provision operates to
compel performance of an act and usually becomes effective only in the event of default upon
which a forfeiture is compelled without regard to the damages sustained by the party aggrieved
by the breach. The characteristic feature of a penalty is its lack of proportional relation to the
damages which may actually flow from failure to perform under a contract.'" Id.

84.     As the California Supreme Court has expressly recognized, "[w]e have
consistently ignored form and sought out the substance of arrangements which purport to
legitimate penalties and forfeitures." Ridgley, 17 Cal. 4th at 979 (citations omitted). "Looking

MEYER LAW GROUP LLP
268 BUSH STREET #3639
SAN FRANCISCO CA 94104
www.meyerllp.com

to the substance rather than the form of the disputed [pre-payment penalty] provision, we agree with the superior court and the Court of Appeal dissenter that it was invalid because it was intended to, and did, operate as a penalty for late payment." Id. "However one describes its form, the intent and effect of the disputed [pre-payment penalty] provision here was that any late payment or other default by plaintiffs would result in a severe penalty — the inability to sell the Property without payment of a sizable pre-set charge." Id. at 979-80. As such, a so-called "prepayment provision" is void under California law if it constitutes an unenforceable penalty for late payment under the terms of the contract. Id. at 982.

85. As set forth in Paragraph 29 of this Complaint, on or about March 6, 2019, when ProMax originally defaulted on the Loan by failing to make the weekly payment required by terms and conditions of the Promissory Note, Defendants immediately penalized Plaintiffs for such default by "accelerating" the Loan and demanding recovery of a "pre-payment" penalty of $390,550.96, which is a punitive charge in excess of 52.07% of the original principal amount ($750,000) of the Loan, and completely devoid of any proportional relation to the damages which may actually flow from ProMax's failure to perform under the Promissory Note.

86. Section 4 and Section 8 of the Promissory Note operate in a conjunctive manner to impose unconsciously and punitive damages on account of a mere default in a single weekly payment required by the Promissory Note, and as a result, the "pre-payment" penalty provisions of Section 4 of the Promissory Note are unconscionable, and thus uncollectable, pursuant to California Civil Code § 1670.5(a) and are unreasonable, and thus not enforceable, as liquidated damages provision pursuant to California Civil Code § 1671.

**FOURTH CAUSE OF ACTION**
**Avoidance and Recovery of Constructive Fraudulent Transfer**
**(11 U.S.C. § 548(a)(1)(B) and 11 U.S.C. § 550)**

(By Plaintiff Jeffrey George Draeger Against All Defendants)

87. Plaintiffs reallege and incorporate herein by this reference each of the allegations set forth in Paragraphs 1 through 86 above as if the same were fully set forth at this point.

88. Draeger did not receive reasonably equivalent value, or any consideration at all,

MEYER LAW GROUP LLP
268 BUSH STREET #3639
SAN FRANCISCO CA 94104
www.meyerllp.com

AP CASE NO.
ORIGINAL COMPLAINT

in exchange for granting WBL CA an interest in: (a) the Vista Del Mar Property, (b) the 11th Street Property, and (c) the 31st Street Property, pursuant to the Deeds of Trust.

89. Draeger is informed and believes and based thereon alleges that Draeger was insolvent prior to and on the Petition Date (December 12, 2019), and at the time of granting WBL CA an interest in: (a) the Vista Del Mar Property, (b) the 11th Street Property, and (c) the 31st Street Property, pursuant to the Deeds of Trust.

90. Draeger is informed and believes and based thereon alleges that on the date of granting WBL CA an interest in: (a) the Vista Del Mar Property, (b) the 11th Street Property, and (c) the 31st Street Property, pursuant to the Deeds of Trust, Draeger was engaged in business for which any property remaining with Draeger was an unreasonably small capital.

91. Draeger is informed and believes and based thereon alleges that on the date of granting WBL CA an interest in: (a) the Vista Del Mar Property, (b) the 11th Street Property, and (c) the 31st Street Property, pursuant to the Deeds of Trust, Draeger intended to incur, or believed he would incur, debts that would be beyond his ability to pay as they matured.

92. Pursuant to 11 U.S.C. § 1107(a), as the Debtor in Possession of the Bankruptcy Case, Draeger is entitled to avoid the Deeds of Trust secured by (a) the Vista Del Mar Property, (b) the 11th Street Property, and (c) the 31st Street Property pursuant to 11 U.S.C. § 548(a)(1)(B), and Draeger is entitled to recover from Defendants the interests constructively fraudulently transferred to them pursuant to 11 U.S.C. § 550 for the benefit of the estate.

93. Defendants were the initial transferee from Draeger of the interest in: (a) the Vista Del Mar Property, (b) the 11th Street Property, and (c) the 31st Street Property, pursuant to the Deeds of Trust.

## FIFTH CAUSE OF ACTION

### Avoidance and Recovery of Constructive Fraudulent Transfer
### (11 U.S.C. § 544(a)(1) and California Civil Code §§ 3439.04(a)(2) and 3439.07)

(By Plaintiff Jeffrey George Draeger Against All Defendants)

94. Plaintiffs reallege and incorporate herein by this reference each of the allegations set forth in Paragraphs 1 through 93 above as if the same were fully set forth at this point.

MEYER LAW GROUP LLP
268 BUSH STREET #3639
SAN FRANCISCO CA 94104
www.meyerllp.com

AP CASE NO.

ORIGINAL COMPLAINT

- 19 -

95.     Pursuant to 11 U.S.C. § 544(a)(1), as of the Petition Date (December 12, 2019), Draeger as Debtor in Possession of the Bankruptcy Case has the avoidance rights and powers under applicable state law of a judicial lien creditor of Draeger, whether or not there is such a creditor.

96.     Draeger did not receive reasonably equivalent value, or any consideration at all, in exchange for granting WBL CA an interest in: (a) the Vista Del Mar Property, (b) the 11th Street Property, and (c) the 31st Street Property, pursuant to the Deeds of Trust.

97.     Draeger is informed and believes and based thereon alleges that on the date of transferring an interest in (a) the Vista Del Mar Property, (b) the 11th Street Property, and (c) the 31st Street Property, pursuant to the Deeds of Trust, Draeger was engaged in a business for which the remaining assets of Draeger were unreasonably small in relation to the business.

98.     Draeger is informed and believes and based thereon alleges that on the date of granting WBL CA an interest in: (a) the Vista Del Mar Property, (b) the 11th Street Property, and (c) the 31st Street Property, pursuant to the Deeds of Trust, Draeger intended to incur, or reasonably should have believed that he would incur, debts that would be beyond his ability to pay as they became due.

99.     Draeger is informed and believes and based thereon alleges that on the date of granting WBL CA an interest in: (a) the Vista Del Mar Property, (b) the 11th Street Property, and (c) the 31st Street Property, pursuant to the Deeds of Trust, Draeger was insolvent within the meaning of California Civil Code § 3439.02.

100.     Draeger is entitled to avoidance of the pre-petition transfer to Defendants pursuant to 11 U.S.C. § 544(a)(1) and California Civil Code §§ 3439.04(a)(2), 3439.06(a), and 3439.07, and Draeger is entitled to recover from Defendants the interests fraudulently transferred to them pursuant to 11 U.S.C. § 550(a).

101.     Defendants were the initial transferee from Draeger of the interest in: (a) the Vista Del Mar Property, (b) the 11th Street Property, and (c) the 31st Street Property, pursuant to the Deeds of Trust.

///



MEYER LAW GROUP LLP

268 BUSH STREET #3639,
SAN FRANCISCO CA 94104
www.meyerllp.com

AP CASE NO.

ORIGINAL COMPLAINT

- 20 -

## SIXTH CAUSE OF ACTION

### Avoidance and Recovery of Constructive Fraudulent Transfer
### (11 U.S.C. § 544(b)(1) and California Civil Code §§ 3439.05 and 3439.07)

(By Plaintiff Jeffrey George Draeger Against All Defendants)

102.     Plaintiffs reallege and incorporate herein by this reference each of the allegations set forth in Paragraphs 1 through 101 above as if the same were fully set forth at this point.

103.     Pursuant to 11 U.S.C. § 544(b), as of the Petition Date (December 12, 2019), Draeger as Debtor in Possession of the Bankruptcy Case, has the avoidance rights and powers under applicable state law of a creditor holding an allowable unsecured claim against the Draeger.  Draeger is informed and believes and based thereupon alleges that as of the Petition Date (December 12, 2019), unsecured claims against the Draeger were not less than $131,986.95.  One or more of these unsecured claims existed before the date (February 11, 2019) that Draeger granted WBL CA an interest in the (a) the Vista Del Mar Property, (b) the 11th Street Property, and (c) the 31st Street Property, pursuant to the Deeds of Trust.

104.     Draeger did not receive reasonably equivalent value, or any consideration at all, in exchange for granting WBL CA an interest in: (a) the Vista Del Mar Property, (b) the 11th Street Property, and (c) the 31st Street Property, pursuant to the Deeds of Trust.

105.     Draeger is informed and believes and based thereon alleges that on the date of granting Defendants an interest in: (a) the Vista Del Mar Property, (b) the 11th Street Property, or (c) the 31st Street Property, pursuant to the Deeds of Trust, Draeger was insolvent within the meaning of California Civil Code § 3439.02.

106.     Draeger is entitled to avoidance of the pre-petition transfer to Defendants pursuant to 11 U.S.C. § 544(b)(1) and California Civil Code §§ 3439.05 and 3439.07(a), and Draeger is entitled to recover from Defendants the interest fraudulently transferred to them pursuant to 11 U.S.C. § 550(a).

107.     Defendants were the initial transferee from Draeger of the interest in: (a) the Vista Del Mar Property, (b) the 11th Street Property, and (c) the 31st Street Property, pursuant to the Deeds of Trust.

MEYER LAW GROUP LLP
268 BUSH STREET #3639
SAN FRANCISCO CA 94104
www.meyerllp.com

- 21 -

AP CASE NO.

ORIGINAL COMPLAINT

## SEVENTH CAUSE OF ACTION

### Objection to Claim
### (11 U.S.C. § 502)

(By Plaintiff Jeffrey George Draeger Against All Defendants)

108.     Plaintiffs reallege and incorporate herein by this reference each of the allegations set forth in Paragraphs 1 through 107 above as if the same were fully set forth at this point.

109.     Pursuant to Federal Rule of Bankruptcy Procedure 3007(b), "[a] party in interest shall not include a demand for relief of a kind specified in Rule 7001 in an objection to the allowance of a claim, but may include the objection in an adversary proceeding." See Fed. R. Bankr. P. 3007(b).

110.     Pursuant to 11 U.S.C. § 502(b)(1), "if such objection to a claim is made, the court … shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." See 11 U.S.C. § 502(b)(1).

111.     Pursuant to 11 U.S.C. § 502(d), "the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title." See 11 U.S.C. § 502(d).

112.     As alleged herein above, the rate of interest set forth in the Promissory Note is unconscionable, illegal, and uncollectable pursuant to applicable California law, including but not limited to, California Civil Code § 1670.5, California Financial Code § 22150, 10 C.C.R. § 1452, and California Business & Professions Code § 17200 et seq.  As such, pursuant to 11 U.S.C. § 502(b)(1), the interest rate set forth in the Promissory Note is not enforceable against Draeger or property of the estate under applicable California law, and the allowed amount of the secured portion of the WBL Proof of Claim shall be reduced by the amount of the

MEYER LAW GROUP LLP

268 BUSH STREET #3639
SAN FRANCISCO CA 94104
www.meyerllp.com

unconscionable, illegal, and uncollectable interest for purposes of distribution pursuant to Draeger's Plan of Reorganization.

113.    As alleged herein above, the Pre-Payment Penalty set forth in Section 4 of the Promissory Note is unconscionable, illegal, and uncollectable pursuant to applicable California law, including but not limited to, California Civil Code §§ 1670.5(a) and 1671, and California Business & Professions Code § 17200 *et seq*.  As such, pursuant to 11 U.S.C. § 502(b)(1), the Pre-Payment Penalty set forth in Section 4 of the Promissory Note is not enforceable against Draeger or property of the estate under applicable California law and the Bankruptcy Code (11 U.S.C. §§ 101 *et seq*.), and the allowed amount of the secured portion of the WBL Proof of Claim shall be reduced by the amount of the unconscionable, illegal, and uncollectable pre-payment penalty for purposes of distribution pursuant to Draeger's Plan of Reorganization.

114.    As alleged herein above, the granting and recordation of the Deeds of Trust secured by the Vista Del Mar Property, the 11th Street Property, and the 31st Street Property, are each avoidable pursuant to 11 U.S.C. § 548(a)(1)(B), 11 U.S.C. § 544(a)(1), 11 U.S.C. § 544(b)(1), and California Civil Code §§ 3439.04(a)(2) and 3439.07.  As such, pursuant to 11 U.S.C. § 502(d), the entirety of the claim of the Defendants in the Bankruptcy Case as set forth in the WBL Proof of Claim shall disallowed unless and until such payment or return of property has been made.

115.    Draeger is informed and believes and based thereupon alleges that Defendants did not properly account for and apply each of those payments made by ProMax as set forth in Paragraph 30 of this Complaint as required by applicable law, and as result, the principal amount ($728,099.75) and the accrued interest amount ($403,215.72) asserted in the WBL Proof of Claim is grossly overstated.

## EIGHTH CAUSE OF ACTION
### Avoidance of Lien
### (11 U.S.C. § 506(d))

(By Plaintiff Jeffrey George Draeger Against All Defendants)

116.    Draeger realleges and incorporates herein by reference each of the allegations set forth in Paragraphs 1 through 115 above as if the same were fully set forth at this point.

MEYER LAW GROUP LLP
268 BUSH STREET #3639
SAN FRANCISCO CA 94104
www.meyerllp.com

AP CASE NO.

ORIGINAL COMPLAINT

117.    Pursuant to 11 U.S.C. § 506(d), "[t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title."

118.    As alleged herein above, the Deeds of Trust secured by the Vista Del Mar Property, the 11th Street Property, and the 31st Property, are each avoidable pursuant to 11 U.S.C. § 548(a)(1)(B), 11 U.S.C. § 544(a)(1), and California Civil Code §§ 3439.04(a)(2), 3439.05, 3439.06(a), and 3439.07, and Defendants do not have an allowed claim secured by the Deeds of Trust on the Vista Del Mar Property, the 11th Street Property, and the 31st Property, or any property of the estate, pursuant to 11 U.S.C. § 502(d).  As such, any alleged claims, liens, or encumbrances secured by the Vista Del Mar Property, the 11th Street Property, and/or the 31st Street Property, or any other property of the estate are void pursuant to 11 U.S.C. § 506(d), Defendants do not have any valid right, title, or interest in the Vista Del Mar Property, the 11th Street Property, and/or the 31st Street Property, or any other property of the estate, and any allowed amount of the WBL Proof of Claim shall be treated solely as a general unsecured claim for purposes of distribution pursuant to the terms and conditions of Draeger's Plan of Reorganization.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs prays for judgment and the following specific relief and against Defendants, and each of them, jointly and separately, as follows:

1.    That the Court declare, adjudge, and decree that Defendants violated California Business & Professions Code §§ 17200-17208;

2.    That the Court make an award to Plaintiffs for damages and/or restitution for the amount of unlawful fees, costs, and expenses added to the loan balance that are not recoverable under the applicable loan documents as a result of the unlawful business practices and activities and breach of the loan agreements;

3.    That the Court declare, adjudge, and decree that the interest rate provision set



forth in the applicable loan documents is unconscionable, unenforceable, and void;

4. That the Court declare, adjudge, and decree that the pre-payment penalty provisions set forth in the applicable loan documents are constitute are unconscionable, constitute an unenforceable penalty, and are void;

5. That the Court declare, adjudge, and decree the secured portion of the WBL Proof of Claim is disallowed in its entirety;

6. That the Court declare, adjudge, and decree the WBL Proof of Claim shall be allowed solely as a general unsecured claim, in an amount not more than $569,011.81 as of the Petition Date (December 12, 2019) for purposes of distribution pursuant to Class 1(H) of Plan of Reorganization;

7. That the Court set aside and avoid the fraudulent transfer of any interest in property of the estate, including but not limited to, the Deeds of Trust secured by the Vista Del Mar Property, the 31st Street Property, and the 11th Street Property, under the Bankruptcy Code (11 U.S.C. §§ 101 *et seq.*) and applicable non-bankruptcy law;

8. That the Court order disgorgement and require Defendants to pay restitution to Plaintiffs of all earnings, profits, compensation, and other monetary benefits received by Defendants as a result of the unlawful business practices and activities pursuant to California Business & Professions Code §§ 17200-17208;

9. For statutory penalties in favor of Plaintiffs against Defendants;

10. For interest on the amount of all economic losses at the prevailing legal rate;

11. For reasonable attorney's fees pursuant to California Civil Code § 1717(a) and/or California Civil Code § 1021.5;

12. That the Court permanently enjoin Defendants and order them to cease and desist from unlawful activities in violation of California Business & Professions Code §§ 17200-17208 pursuant to California Business & Professions Code §§ 17203 and 17353; and

///

///

///



MEYER LAW GROUP LLP
268 BUSH STREET #3639,
SAN FRANCISCO CA 94104
www.meyerllp.com

13.     For costs of suit and such other and further relief as the Court may deem just and proper under the circumstances.

Dated: June 8, 2020                    **MEYER LAW GROUP LLP**

                                       By: /s/ BRENT D. MEYER
                                           Brent D. Meyer, Esq.
                                           Attorneys for Plaintiff
                                           JEFFREY GEORGE DRAEGER

Dated: June 8, 2020                    **CALLAHAN & BLAINE, APLC**

                                       By: /s/ BRETT E. BITZER
                                           Edward Susolik, Esq.
                                           Brett E. Bitzer, Esq.
                                           Attorneys for Plaintiff
                                           PROMAX BUILDERS, INC.
                                           *dba* PRO CRAFT BUILDERS

MEYER LAW GROUP LLP
268 BUSH STREET #3639
SAN FRANCISCO CA 94104
www.meyerllp.com

AP CASE NO.
ORIGINAL COMPLAINT

# EXHIBIT A

DocuSign Envelope ID: 665D2E4F-4CB0-4DEF-94DA-1530AEB423B8

THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.net

 **WBL California, LLC**

## BUSINESS PROMISSORY NOTE AND SECURITY AGREEMENT

**BORROWER: Promax Builders, Inc. dba Pro-Craft Builders**

**PRINCIPAL (including processing fees): $750,000.00**

**DATE: 2/11/2019**

**1. PROMISE TO PAY: Promax Builders, Inc. dba Pro-Craft Builders** ("Borrower"), with its principal place of business located at 46000 Warm Springs Blvd, Fremont, California, 94539, does hereby promise to pay to the order of **WBL CALIFORNIA, LLC** ("Lender") at its offices located at 3090 Bristol St., Ste. 160, Costa Mesa, CA 92626, or at such other location or in such other manner as designated by Lender, the sum of **SEVEN HUNDRED FIFTY THOUSAND DOLLARS AND ZERO CENTS ($750,000.00)** ("Principal") plus interest at the daily interest rate set forth below in Section 2 in accordance with the payment schedule set forth below in Section 3.

**2. INTEREST RATE:** The unpaid Principal shall bear interest at the rate of **0.19698630137%** per day until paid in full.

**3. PAYMENT SCHEDULE/APPLICATION OF PAYMENTS:** Borrower shall repay the Principal and interest commencing on **2/21/2019** and on each Business Week thereafter until **5/7/2020** with each weekly payment equaling **$17,546.94**, followed by a final payment of **$17,546.80** on **5/14/2020**, when any remaining outstanding Principal, interest and other unpaid charges shall be due and payable in full. **"Business Week" means the first Business Day on or after the Thursday of each week. "Business Day" means any Monday through Friday, except Federal Reserve holidays.** The period commencing on **2/21/2019** and ending on **5/14/2020** is referred to as the "Repayment Period."

All payments shall be made by automatic ACH debit from the "Designated Checking Account" set forth in the Business Loan Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits) given by Borrower to Lender, and Borrower shall maintain balances in the Designated Checking Account sufficient to make each weekly payment due under this Business Promissory Note and Security Agreement ("Loan Agreement").

Payments shall be applied on the date received first to late charges and other charges due under this Loan Agreement, then to unpaid accrued interest, and then to Principal.

**4. PREPAYMENT:** Borrower has the right to prepay the unpaid Principal in full at any time, but may not make partial prepayments (except as required by applicable law). Any prepayment shall include a prepayment charge equal to the greater of (a) fifteen percent (15%) of the amount of the unpaid Principal or (b) the aggregate amount required to be repaid by Borrower to Lender during the Repayment Period reduced by (i) the aggregate amount of any payments made by Borrower to Lender pursuant to Section 3 above prior to the date of such prepayment and (ii) the amount of the unpaid Principal. This prepayment charge is in addition to any interest calculated and accrued in accordance with Section 2 above. No prepayment is permitted unless all outstanding charges are paid in full as of the date of prepayment. If Borrower desires to prepay, Borrower shall contact Lender at its address above in Section 1, via email at WBLPayoff@wbl.com, or at 212-293-8200, and Lender shall provide Borrower with the amount necessary to prepay as of a date designated by Borrower. For the avoidance of doubt, as permitted under applicable law, if the Obligations have been accelerated on the happening of an Event of Default, payment of Principal and interest shall be deemed a prepayment for purposes of this Section 4.

**5. RETURNED PAYMENT CHARGE:** Borrower will pay a charge of **thirty-five dollars ($35.00)** in connection with any payment by check or electronic transfer that is returned unpaid because of an insufficient balance in the Designated Checking Account or otherwise.

**6. SECURITY INTEREST:** Borrower grants to Lender a security interest in and to any and all property as described below in this Section 6 to secure payment of all debts, obligations and liabilities of Borrower to Lender evidenced by this Loan Agreement or any prior loan agreement with Lender ("Obligations"). This is a continuing security interest and will continue in effect even though all or any part of the Obligations is paid in full and even though for a period of time Borrower may not be indebted to Lender. The collateral includes the property purchased with the proceeds described as follows (if any): **NONE** , ("Purchase Money Collateral") and also includes all personal property now owned or hereafter acquired by the Borrower (which, along with the Purchase Money Collateral, is collectively referred to as "Collateral"), including, but not limited to, all goods (except consumer goods), farm products, inventory, equipment, furniture, money, instruments, accounts, accounts receivable, contract rights, documents, chattel paper, general intangibles, including, but not limited to, all products and proceeds of Collateral and all additions and accessions to, replacements of, insurance proceeds of, and documents covering Collateral, all property received wholly or partly in trade or exchange for Collateral, all leases of Collateral and all rents, revenues, issues, profits and proceeds arising from the sale, lease encumbrance, collection, or any other temporary or permanent disposition, of the Collateral or any interest therein. Borrower agrees that Lender may file any financing statement, lien entry form or other document Lender requires in order to perfect, amend or continue Lender's security interest

THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.net

**WBL California, LLC**

in the Collateral and Borrower agrees to cooperate with Lender as may be necessary to accomplish said filing and to do whatever Lender deems necessary to protect Lender's security interest in the Collateral.

Borrower shall: maintain the Collateral in good condition and repair and not permit its value to be impaired; keep it free from all liens, encumbrances and security interests (other than those created or expressly permitted by this Loan Agreement); defend it against all claims and legal proceedings by persons other than Lender; pay and discharge when due all taxes, license fees, levies and other charges upon it; not sell, lease or otherwise dispose of it or permit it to become a fixture or an accession to other goods, except as specifically authorized by Lender in writing; and not permit it to be used in violation of any applicable law, regulation or policy of insurance. Lender is authorized to examine the Collateral wherever located at any reasonable time or times and Borrower shall assist Lender in making any such inspection.

Borrower shall pay all expenses and, upon request, take any action reasonably deemed advisable by Lender to preserve the Collateral or to establish, determine priority of, perfect, continue perfected, terminate and/or enforce Lender's interest in the Collateral or rights under this Loan Agreement and, further, Borrower authorizes Lender, with full power of substitution, to execute in Borrower's name any documents necessary to perfect, amend or to continue Lender's interest in the Collateral or rights under this Loan Agreement or to demand termination of filings of other secured parties. Lender has no duty to protect, insure or realize upon the Collateral. Loss of or damage to the Collateral shall not release Borrower from any of the Obligations.

**7. WARRANTIES:** Borrower warrants that:

Borrower is the owner of or is acquiring the Purchase Money Collateral free of all liens, encumbrances and security interests (except Lender's security interest), and is the owner of all other Collateral free of all liens, encumbrances and security interests, except Lender's security interest and the following security interests of: NONE:

(a) the proceeds of this Loan Agreement will be used for business purposes only, and not for personal, consumer, family or household purposes or to purchase personal, consumer, family or household goods;

(b) the Collateral will be kept at Borrower's address set forth above in Section 1, or at the following address:

  1017 Vista Del Mar San Jose, CA 95132
  439 N 11th St San Jose, CA 95112
  136 N 31st St San Jose, CA 95116

(c) Borrower's name in Section 1 above is its exact name on its organizing and/or registered documents, if any, and is Borrower's principal place of business. Borrower shall immediately advise Lender of any change in Borrower's name or address as set forth above in Section 1;

(d) Borrower is duly organized, validly existing and in good standing under the law of the jurisdiction in which it is organized, and has all licenses and authorizations necessary to carry on its business as now being conducted;

(e) Borrower has the full power and authority to execute, deliver and perform all transactions contemplated by this Loan Agreement and the performance of and compliance with the terms of this Loan Agreement will not violate the Borrower's organizational documents or constitute a default of any contract, agreement or other instrument to which Borrower is a party;

(f) Borrower has duly authorized the execution, delivery and performance of this Loan Agreement and has duly executed and delivered this Loan Agreement, and this Loan Agreement constitutes a legal, valid and binding obligation of the Borrower, enforceable against it in accordance with its terms;

(g) there is no action, suit, proceeding or investigation pending or, to Borrower's knowledge, threatened against or affecting it or any of its assets before or by any court or other governmental authority which, if determined adversely to it, would have a material adverse effect on its financial condition, business or prospects, or the value of the Collateral; and

(h) Borrower will provide any financial information on request or permit an examination of its books and records to permit Lender to confirm Borrower's ability to pay its Obligations and all other financial obligations.

**8. DEFAULT:** On the happening of any of the following events (each an "Event of Default"):

(a) failure by Borrower to pay any weekly or other payment required by this Loan Agreement when due;

(b) failure by Borrower to observe, perform, keep or abide by any term, covenant or condition contained in this Loan Agreement, or any other document or instrument given to Lender;

THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.net

**WBL California, LLC**

(c) the filing of a bankruptcy proceeding, assignment for the benefit of creditors, issuance of a judgment execution, garnishment or levy against, or the appointment of a representative of any kind for the commencement of any proceeding for relief from indebtedness by or against Borrower;

(d) the happening of any event, which, in the reasonable judgment of Lender, adversely affects Borrower's ability or the ability of any guarantor of Borrower's Obligations under this Loan Agreement ("Guarantor") to repay Borrower's Obligations, or materially affects the value of the Collateral;

(e) any written representation, statement or warranty made to Lender by Borrower or any Guarantor is untrue or is breached;

(f) the occurrence of a default under any guaranty of Borrower's Obligations ("Guaranty"), or any other document or instrument given to Lender, or an event of default under any other loan agreement that Borrower may have with any other lender;

(g) any Guaranty is revoked or becomes unenforceable for any reason;

(h) Lender, upon examination of Borrower's financial information during the term of this Loan Agreement, becomes insecure in Borrower's ability to pay the Obligations,

Lender, at its option, without notice or demand (except as required by applicable law), may (x) declare the entire unpaid balance of all Obligations under this Loan Agreement or other agreements immediately due and payable, and shall have the right to proceed to collect such Obligations under applicable law and enforce its rights under any Guaranty; and (y) proceed against the Collateral as permitted under the applicable Uniform Commercial Code or any other applicable law. As permitted under the Uniform Commercial Code, Lender may take possession of Collateral without notice or hearing, which Borrower waives, and upon demand, Borrower shall assemble the Collateral and make it available to Lender at any convenient place designated by Lender. Lender's receipt of any payment after the occurrence of an Event of Default, whether or not the Obligations have been accelerated, shall not constitute a waiver of the default or of Lender's rights or remedies upon such default, including Lender's right to accelerate the unpaid balance of the Obligations and pursue collection thereof. Election by Lender to pursue or waive any remedy shall not exclude pursuit of any other remedy.

**9. ATTORNEYS' FEES AND COLLECTION COSTS:** In the event Lender retains counsel with respect to enforcement of its rights under this Loan Agreement or any other document or instrument given to Lender, Borrower agrees to pay all expenses of Lender in enforcing its rights to collect the Obligations or in taking possession, holding, preparing for disposition, and disposing of the Collateral, including Lender's reasonable attorneys' fees (whether or not an action is commenced and whether or not in the court of original jurisdiction, appellate court, bankruptcy court or otherwise) and all costs of collection of any judgment and any costs of appeal.

**10. SALE OF LOAN AGREEMENT:** This Loan Agreement, or an interest in this Loan Agreement, together with the rights to the Collateral, may be sold, assigned, transferred or conveyed by Lender one or more times.

**11. INDEMNIFICATION:** Except for Lender's willful misconduct, Borrower will indemnify and save Lender harmless from all loss, costs, damage, liability or expenses (including, without limitation, court costs and reasonable attorneys' fees) that Lender may sustain or incur by reason of defending or protecting Lender's security interest or the priority thereof or enforcing its rights to collect the Obligations, or in the prosecution or defense of any action or proceeding concerning any matter growing out of or in connection with this Loan Agreement and/or any other documents or instruments now or hereafter executed in connection with this Loan Agreement and/or the Obligations and/or the Collateral. This indemnity shall survive the repayment of the Obligations and the termination of this Loan Agreement.

**12. MISCELLANEOUS:**

(a) Delay or failure of Lender to exercise any of its rights under this Loan Agreement shall not be deemed a waiver thereof. No waiver of any condition or requirement shall operate as a waiver of any other or subsequent condition or requirement.

(b) Borrower waives trial by jury with respect to any action arising out of or relating to this Loan Agreement.

(c) This Loan Agreement may not be modified orally, and may be modified only upon written agreement signed by Lender.

(d) This Loan Agreement shall be governed by the laws of the State of California without regard to its conflicts of laws rules.

(e) Subject to Section 12(o), Borrower irrevocably consents with respect to any suit, action or proceeding relating to this Loan Agreement or any of the other loan documents relating to the Obligations, that venue shall be in any court of the State of California or in the United States District Courts sitting in the State of California, and Borrower waives

THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.net

**WBL California, LLC**

personal service of process and agrees that a summons and complaint commencing a suit, action or proceeding in any such court shall be properly served and confer personal jurisdiction if served by registered or certified mail to Borrower at the address specified by Borrower above in Section 1, or as otherwise provided by the federal law or the laws of the State of California or the United States of America. Borrower agrees that venue is proper in such courts and that such courts shall have sole jurisdiction over such suit, action or proceeding.

(f) Without affecting the liability of Borrower or any Guarantor, Lender may accept partial payments marked "in full" or otherwise, release or impair any Collateral or agree not to sue any party liable on this Loan Agreement without waiving any of its rights hereunder.

(g) Presentment, protest, demand and notice of dishonor are waived.

(h) Without affecting the liability of any Guarantor, Lender may from time to time, without notice, renew or extend the time for payment.

(i) Borrower expressly agrees that the interest rate set forth above in Section 2 is appropriate under the circumstances and shall be the applicable rate at which unpaid Principal (and Costs) shall bear interest under this Loan Agreement, notwithstanding any rate of interest prescribed by statute from time to time; provided, however, if fulfillment of any provisions of this Loan Agreement or any other instrument securing the Obligations is subject to a law that sets maximum interest rates or other charges, and that law is finally interpreted so that the interest or other fees collected or to be collected in connection with this Loan Agreement exceed the permitted limits, then (I) any such charge will be reduced by the amount necessary to reduce the charge to the permitted limit and (II) any sums already collected from Borrower that exceed the permitted limits will be refunded or credited to Borrower and the obligations created by this Loan Agreement shall be fulfilled to the limit of such validity as is permitted by law.

(j) Borrower shall keep the Collateral and Lender's interest in it insured under policies with such provisions, for such amounts and by such insurers as shall be satisfactory to Lender from time to time, and shall furnish evidence of such insurance satisfactory to Lender upon request. Borrower assigns (and directs any insurer to pay) to Lender the proceeds of all such insurance and any premium refund and authorizes Lender to endorse in the name of Borrower any instrument for such proceeds or refunds and, at the option of Lender, to apply such proceeds and refunds to any unpaid balance of the Obligations, whether or not due, and/or to restoration of the Collateral, returning any excess to Borrower. Lender is authorized, in the name of Borrower or otherwise, to make, adjust and/or settle claims under any insurance on the Collateral, or cancel the same after the occurrence of an Event of Default.

(k) If Borrower fails to perform any of Borrower's duties set forth in this Loan Agreement or in any evidence of or document relating to the Obligations, Lender is authorized, in Borrower's name or otherwise, to take any such action, including, without limitation, signing Borrower's name or paying any amount so required, and the cost ("Cost") shall be one of the Obligations secured by this Loan Agreement and shall be payable by Borrower upon Lender's demand with interest at the interest rate set forth above in Section 2 from the date of payment by Lender.

(l) Borrower releases Lender from any liability for any act or omission relating to the Obligations, the Collateral or this Loan Agreement, except Lender's willful misconduct.

(m) Invalidity or unenforceability of any provision of this Loan Agreement shall not affect the validity or enforceability of any other provision.

(n) The terms of this Loan Agreement shall be binding upon Borrower and its permitted successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

(o) Any of the Borrower, Lender or a Guarantor may choose to arbitrate any or all disputes and claims arising out of or relating to this Loan Agreement, the Guaranty or any other related document. A claim includes matters arising as an initial claim, counter-claim, cross-claim, third-party claim, or otherwise. If the Borrower, Lender or a Guarantor chooses to litigate any dispute or claim arising out of or relating to this Loan Agreement, the Guaranty or any related document through a judicial action, the decision to litigate shall not be deemed a waiver of arbitration, and if such judicial action is contested, any party may thereafter invoke its arbitration rights at any time before any discovery is taken in the judicial action. If the Borrower, Lender or a Guarantor seeks to have a dispute resolved by arbitration, that party must first send to the other party(ies) by certified mail, a written Notice of Intent to Arbitrate. If Borrower, Lender or a Guarantor do not reach an agreement to resolve the claim within 10 days after the Notice is received, any party may commence an arbitration proceeding with the American Arbitration Association ("AAA"). Lender will promptly reimburse Borrower or the Guarantor any arbitration filing fee, however, in the event that both the Borrower and the Guarantor must pay arbitration filing fees, Lender will only reimburse the Borrower's arbitration filing fee and, except as provided in the next sentence, the Lender will pay all arbitration administration and arbitrator fees. If the arbitrator finds that either the substance of any claim raised by Borrower or a Guarantor or

THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.net

**WBL California, LLC**

the relief sought by Borrower or a Guarantor is improper or not warranted, as measured by the standards set forth in Federal Rules of Civil Procedure 11(b), then Lender will pay the administration or arbitrator fees only if required by the AAA Rules.  If the arbitrator grants relief to the Borrower or a Guarantor that is equal to or greater than the value of the relief requested by the Borrower or a Guarantor in the arbitration, Lender shall reimburse Borrower or the Guarantor, as applicable, for that party's reasonable attorneys' fees and expenses incurred for the arbitration. BORROWER AND LENDER AGREE THAT BY ENTERING INTO THIS LOAN AGREEMENT, EACH IS WAIVING THE RIGHT TO TRIAL BY JURY.  BORROWER AND LENDER MAY BRING CLAIMS AGAINST ANY OTHER PARTY ONLY IN THEIR INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF REPRESENTATIVE OR CLASS MEMBER IN ANY PURPORTED REPRESENTATIVE OR CLASS PROCEEDING.  Further, Borrower and Lender agree that the arbitrator may not consolidate proceedings for more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding, and if this specific provision is found unenforceable, then the entirety of this arbitration clause shall be null and void. Any award by the individual arbitrator shall be final and binding, except for any appeal right under the Federal *Arbitration Act* ("FAA"), and may be entered and enforceable as a judgment in any court of competent jurisdiction, including as a judgment that permits Lender to initiate or complete the exercise of its remedies against, or its realization or foreclosure upon, any collateral or security provided for the benefit of Lender.  This arbitration provision is made pursuant to a transaction in interstate commerce, and shall be governed by the Federal Arbitration Act at 9 U.S.C. Section 1.

**[Remainder of page is blank.  Signature page follows.]**

THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.net

**WBL California, LLC**

**PRIOR TO SIGNING THIS LOAN AGREEMENT, BORROWER READ AND UNDERSTOOD ALL OF THE PROVISIONS OF THIS LOAN AGREEMENT. AFTER DUE CONSIDERATION, AND THE OPPORTUNITY TO CONSULT WITH OTHER LENDERS AND AN ATTORNEY, ACCOUNTANT OR OTHER COMPETENT PROFESSIONAL OF ITS CHOICE, BORROWER KNOWINGLY, WILLFULLY AND VOLUNTARILY AGREES TO THE TERMS OF THIS LOAN AGREEMENT.**

**BORROWER ACKNOWLEDGES RECEIPT OF A FULLY COMPLETED AND EXECUTED VERSION OF THIS LOAN AGREEMENT.**

**BORROWER: Promax Builders, Inc. dba Pro-Craft Builders**

**By:** _____  **Title:** CEO _____

2ACF236DB6B845A...

**Printed Name:** Jeffrey George Draeger  **Date:** 2/13/2019

## ACKNOWLEDGMENT

STATE/COMMONWEALTH OF _____ )

) ss.:

COUNTY OF _____ )

On the _____ day of _____, in the year _____ before me, the undersigned, a notary public in and for said State/Commonwealth, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within Business Promissory Note and Security Agreement and acknowledged to me that she/he executed the same in her/his capacity as _____ of _____, and that by her/his signature on the Business Promissory Note and Security Agreement, the individual, or the person upon behalf of which the individual acted, executed the Business Promissory Note and Security Agreement.

_____

Notary Public

My Commission expires: _____

# EXHIBIT B

THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.net

 **WBL California, LLC**

## CONTINUING GUARANTY (Unlimited)

Dated: 2/11/2019

**GUARANTY.** For value received, and to induce WBL CALIFORNIA, LLC ("Lender"), with offices at 3090 Bristol St., Ste. 160, Costa Mesa, CA 92626, to extend credit or grant or continue other credit accommodations to Promax Builders, Inc. dba Pro-Craft Builders ("Borrower"), the undersigned ("Guarantor," whether one or more) jointly and severally guarantees payment of the Obligations defined below when due or at the time any Borrower becomes the subject of bankruptcy or other insolvency proceedings. Except as provided below, "Obligations" mean all debts, obligations and liabilities of Borrower to Lender arising out of credit previously granted, credit contemporaneously granted or credit granted in the future by Lender to Borrower. Obligations include interest and charges and the amount of payments made to Lender or another by or on behalf of Borrower which are recovered from Lender by a trustee, receiver, creditor or other party pursuant to applicable federal or state law, and all costs, expenses and attorneys' fees at any time paid or incurred before and after judgment in endeavoring to collect all or part of any of the above, or to realize upon this Guaranty, or any collateral securing any of the above, including those incurred in successful defense or settlement of any counterclaim brought by Borrower or Guarantor or incident to any action or proceeding involving Borrower or Guarantor brought pursuant to the United States Bankruptcy Code. Obligations do not include personal, consumer, family or household transactions. Guarantor grants to Lender a security interest and lien in any credit balance and other money now owing or hereafter owed Guarantor by Lender. Lender may, at any time after the occurrence of an event of default with respect to any Obligation, without prior notice or demand, set off against any such credit balance or other money any amount owing upon the Obligations. This Guaranty also is secured by all existing and future security agreements between Lender and Guarantor. This Guaranty is valid and enforceable against Guarantor even though any Obligation is invalid or unenforceable against the Borrower.

**WAIVER.** Guarantor expressly waives (a) notice of the acceptance of this Guaranty, the creation of any present or future Obligation, default under any Obligation, proceedings to collect from the Borrower or anyone else, (b) all diligence of collection and presentment, demand, notice and protest, (c) any right to disclosures from Lender regarding the financial condition of the Borrower or the enforceability of the Obligations, and (d) all other legal and equitable defenses of surety ship and impairment of collateral. No claim, including a claim for reimbursement, subrogation, contribution or indemnification which Guarantor may, as a guarantor of the Obligations, have against a co-guarantor of any of the Obligations or against the Borrower shall be enforced or any payment accepted until the Obligations are paid in full and no payments to or collections by Lender are subject to any right of recovery.

**CONSENT.** With respect to any of the Obligations, Lender may from time to time before or after revocation of this Guaranty without notice to Guarantor and without affecting the liability of Guarantor (a) surrender, release, impair, sell or otherwise dispose of any security or collateral for the Obligations, (b) release or agree not to sue any guarantor or surety, (c) fail to perfect its security interest in or realize upon any security or collateral, (d) fail to realize upon any of the Obligations or to proceed against any Borrower or any guarantor or surety, (e) renew or extend the time of payment, (f) increase or decrease the rate of interest or the amount of the Obligations, (g) accept additional security or collateral, (h) determine the allocation and application of payments and credits and accept partial payments, (i) apply the proceeds of disposition of any collateral for the Obligations to any obligation of Borrower secured by such collateral in such order and amounts as it elects, (j) determine what, if anything, may at any time be done with reference to any security or collateral, and (k) settle or compromise the amount due or owing or claimed to be due or owing from the Borrower, which settlement or compromise shall not affect Guarantor's liability for the full amount of the unpaid Obligations. Guarantor expressly consents to and waives notice of all of the above. Guarantor consents to and authorizes Lender or its agents to obtain information concerning Guarantor's financial condition, including credit reports. Nothing contained in this Guaranty shall require Lender to first seek or exhaust any remedy against Borrower or to first proceed against any collateral or security for any of the Obligations or this Guaranty.

**PERSONS BOUND.** This Guaranty benefits and is enforceable by Lender, and its successors and assigns (collectively called "successors" and each a "successor"), and binds Guarantor, and Guarantor's heirs, personal representatives, successors and assigns. This Guaranty shall continue in full force and effect notwithstanding any change in structure or status of Borrower or Lender, whether by merger, consolidation, reorganization or otherwise, or assignment of this Guaranty to a successor Lender.

**This Guaranty includes additional provisions on the next page.**

## REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

Page 1 of | 13

**THIS IS A COPY**
The Authoritative Copy of this record is held at na2.docusign.net

 **WBL California, LLC**

---

### NOTICE TO GUARANTOR

**You are being asked to guarantee the past, present and future Obligations of Borrower. If Borrower does not pay, you will have to. You may also have to pay collection costs. Lender can collect the Obligations from you without first trying to collect from Borrower or another guarantor or proceeding against any collateral or other security for the Obligations.**

---

**(Guarantor)**Jeffrey George Draeger

(Guarantor Signature)⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

2ACF236DB6B845A...

**(Guarantor)**Michael Yin

(Guarantor Signature)⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

A65709BBDC4E402...

**(Guarantor)**Marcella Anne Mance

(Guarantor Signature)⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

676A35B9E86A435...

---

### FOR MARRIED RESIDENTS ONLY

Each Guarantor who signs below represents that this obligation is incurred in the interest of his or her marriage or family.

X⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

2ACF236DB6B845A...

X⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

X⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

---

DocuSign Envelope ID: 665D2E4F-4CB0-4DEF-94DA-1530AEB423B8

THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.net

**WBL California, LLC**

Acknowledgement to signature(s) on following pages.

## ADDITIONAL PROVISIONS

**ENTIRE AGREEMENT.** This Guaranty is intended by Guarantor and Lender as a final expression of this Guaranty and as a complete and exclusive statement of its terms, there being no conditions to the full effectiveness of this Guaranty. This Guaranty may not be supplemented or modified, except in writing by Lender.

**REPRESENTATIONS.** Guarantor acknowledges and agrees that Lender (a) has not made any representations or warranties with respect to, (b) does not assume any responsibility to Guarantor for, and (c) has no duty to provide information to Guarantor regarding, the enforceability of any of the Obligations or the financial condition of the Borrower. **Guarantor has independently determined the creditworthiness of Borrower and the enforceability of the Obligations and until the Obligations are paid in full will independently and without reliance on Lender continue to make such determinations.**

**REVOCATION.** This is a continuing guaranty and shall remain in full force and effect until Lender receives written notice of its *revocation signed by Guarantor or actual notice of the death of Guarantor.* Upon revocation by written notice or actual notice of death, this Guaranty shall continue in full force and effect as to all Obligations contracted for or incurred before revocation and, as to them, Lender shall have the rights provided by this Guaranty as if no revocation had occurred. Any renewal, extension or increase in the interest rate of any such Obligation, whether made before or after revocation, shall constitute an Obligation contracted for or incurred before revocation. Obligations contracted for or incurred before revocation shall also include credit extended after revocation pursuant to commitments made before revocation. Revocation by one Guarantor shall not affect any of the liabilities or obligations of any other Guarantor and this Guaranty shall continue in full force and effect with respect to them.

**INTERPRETATION.** The validity, construction and enforcement of this Guaranty are governed by the laws of the State of California without regard to its conflicts of laws rules. All terms not otherwise defined have the meanings assigned to them by the applicable Uniform Commercial Code. Invalidity or unenforceability of any provision of this Guaranty shall not affect the validity or enforceability of any other provision.

**JURISDICTION.** Guarantor irrevocably consents with respect to any suit, action or proceeding relating to this Guaranty or any of the other loan documents relating to the Obligations, that venue shall be in any court of the State of California or in the United States District Courts sitting in California, and Guarantor waives personal service of process and agrees that a summons and complaint commencing an action or proceeding in any such court shall be properly served and confer personal jurisdiction if served by registered or certified mail to Guarantor at the address specified by Guarantor above, or as otherwise provided by the laws of the State of California or the United States of America. Guarantor agrees that venue is proper in such courts and that such courts shall have sole jurisdiction over such action.

**ARBITRATION.** Any of the Borrower, Lender or a Guarantor may choose to arbitrate any or all disputes and claims arising out of or relating to this Guaranty or any other related document. A claim includes matters arising as an initial claim, counter-claim, cross-claim, third-party claim, or otherwise. If the Borrower, Lender or a Guarantor chooses to litigate any dispute or claim arising out of or relating to this Guaranty or any related document through a judicial action, the decision to litigate shall not be deemed a waiver of arbitration, and if such judicial action is contested, any party may thereafter invoke its arbitration rights at any time before any discovery is taken in the judicial action. If the Borrower, Lender or a Guarantor seeks to have a dispute resolved by arbitration, that party must first send to the other party(ies) by certified mail, a written Notice of Intent to Arbitrate. If Borrower, Lender or a Guarantor do not reach an agreement to resolve the claim within 10 days after the Notice is received, any party may commence an arbitration proceeding with the American Arbitration Association ("AAA"). Lender will promptly reimburse Borrower or the Guarantor any arbitration filing fee, however, in the event that both the Borrower and the Guarantor must pay arbitration filing fees, Lender will only reimburse the Borrower's arbitration filing fee and, except as provided in the next sentence, the Lender will pay all arbitration administration and arbitrator fees. If the arbitrator finds that either the substance of any claim raised by Borrower or a Guarantor or the relief sought by Borrower or a Guarantor is improper or not warranted, as measured by the standards set forth in Federal Rule of Procedure 11(b), then Lender will pay the administration and arbitrator fees only if required by the AAA Rules. If the arbitrator grants relief to the Borrower or a Guarantor that is equal to or greater than the value of the relief requested by the Borrower or a Guarantor in the arbitration, Lender shall reimburse Borrower or the Guarantor, as applicable, for that party's reasonable attorneys' fees and expenses incurred for the arbitration. GUARANTOR AND LENDER AGREE THAT BY ENTERING INTO THIS GUARANTY, EACH IS WAIVING THE RIGHT TO TRIAL BY JURY. GUARANTOR AND LENDER MAY BRING CLAIMS AGAINST ANY OTHER PARTY ONLY IN THEIR INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF REPRESENTATIVE OR CLASS MEMBER IN ANY PURPORTED REPRESENTATIVE OR CLASS PROCEEDING. Further, Guarantor and Lender agree that the arbitrator may not consolidate proceedings for more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding, and if this specific provision is found unenforceable, then the entirety of this arbitration clause shall be null and void. Any award by the individual arbitrator shall be final and binding, except for any appeal right under the Federal Arbitration Act ("FAA"), and may be entered and enforceable as a judgment in any court of competent jurisdiction, including as a judgment that permits Lender to initiate or complete the exercise of its remedies against, or its realization or foreclosure upon, any collateral or security provided for the benefit of Lender. This arbitration provision is made pursuant to a transaction in interstate commerce, and shall be governed by the Federal Arbitration Act at 9 U.S.C. Section 1.

THIS IS A COPY
The Authoritative Copy of this record is held at na2.docusign.net

**WBL California, LLC**

## JURY WAIVER

**GUARANTOR KNOWINGLY AND VOLUNTARILY WAIVES TRIAL BY JURY IN ANY ACTION, PROCEEDING, CLAIM OR COUNTERCLAIM BASED UPON, ARISING OUT OF OR IN ANY WAY RELATING TO THIS GUARANTY, THE OBLIGATIONS GUARANTEED BY THIS GUARANTY OR ANY CONDUCT, ACT OR OMISSION OF LENDER, AND AGREES AND CONSENTS THAT ANY SUCH ACTION, PROCEEDING, CLAIM OR COUNTERCLAIM SHALL BE DECIDED BY TRIAL TO THE COURT WITHOUT A JURY. GUARANTOR ACKNOWLEDGES AND UNDERSTANDS THAT THIS WAIVER AND CONSENT CONSTITUTES A MATERIAL INDUCEMENT TO LENDER TO ENTER INTO THE TRANSACTION WITH THE BORROWER.**

**Guarantor** Jeffrey George Draeger

X: _____
2ACF236DB6B845A...

**Guarantor** Michael Yin

X: _____
A65709BBDC4E402...

**Guarantor** Marcella Anne Mance

X: _____
676A35B9E86A435...

Acknowledgement to signature(s) on following pages.

# EXHIBIT C

FIRST AMERICAN TITLE COMPANY LOS ANGELES

**\*\*This document was electronically submitted
to Santa Clara County for recording\*\***

**24117809**

**Regina Alcomendras**
Santa Clara County - Clerk-Recorder
02/15/2019 02:48 PM

Titles: 1      Pages: 12
Fees: $133.00
Tax: $0
Total: $133.00

*Recording Requested By: Simrod*

After Recording Return To:

World Business Lenders, LLC
101 Hudson St. 33rd Floor
Jersey City, NJ 07302

S83311S

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 16, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated February 11th, 2019, together with all riders to this document.

**(B)    "Trustor"** is Jeffrey G. Draeger, a married man as his sole and separate property, whose address is 1017 Vista Del Mar, San Jose, CA 95132.

**(C) "Lender"** is WBL California, LLC, its successors and/or assigns whose address is 101 Hudson Street, 33rd Floor, Jersey City, NJ 07302. Lender is the beneficiary under this Security Instrument.

**(D) "Trustee"** is Old Republic Title Company, whose address is 350 California St., Suite 1200, San Francisco, CA 94104.

**(E) "Note"** means the promissory note signed by Borrower and dated February 11th, 2019. The Note states that Borrower owes Lender **Seven Hundred Fifty Thousand** ($750,000.00) Dollars plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than May 14th, 2020.

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(I) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(J) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(K) "Escrow Items"** means those items that are described in Section 3.

**(L) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(M) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" if the Loan qualifies as a "federally related mortgage loan" under RESPA. Depending on the purpose of the Loan, RESPA may not be applicable to this transaction.

California – Deed of Trust – Residential – Guarantor      1 of 12
Revision Date: July 2016

"federally related mortgage loan" under RESPA. Depending on the purpose of the Loan, RESPA may not be applicable to this transaction.

**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**(Q.) "Borrower"** is Promax Builders, Inc. dba Pro- Craft Builders.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Trustor irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of Santa Clara, State of California:

**See Exhibit A, which is attached hereto and made a part hereof as if fully set forth herein.**

**The Property is commonly known as;**

**Parcel 1: 1017 Vista Del Mar, San Jose, CA 95132**

**Parcel 2: 136 N. 31st Street, San Jose, CA 95116**

**Parcel 3: 439 N. 11th Street, San Jose, CA 95116**

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

TRUSTOR COVENANTS that Trustor is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Trustor warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Trustor and Lender covenant and agree as follows:

**1.    Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2.    Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

     **3.**     **Funds for Escrow Items.** If required by Lender, Trustor shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; and (c) premiums for any and all insurance required by Lender under Section 5. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Trustor, and such dues, fees and assessments shall be an Escrow Item. Trustor shall promptly furnish to Lender all notices of amounts to be paid under this Section. Trustor shall pay Lender the Funds for Escrow Items unless Lender waives Trustor's obligation to pay the Funds for any or all Escrow Items. Lender may waive Trustor's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Trustor shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Trustor's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Trustor is obligated to pay Escrow Items directly, pursuant to a waiver, and Trustor fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Trustor shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Trustor shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA (if applicable), and (b) not to exceed the maximum amount a lender can require under RESPA (if applicable). Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA (if applicable). Lender shall not charge Trustor for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Trustor interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Trustor any interest or earnings on the Funds. Trustor and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Trustor, without charge, an annual accounting of the Funds as required by RESPA (if applicable).

If there is a surplus of Funds held in escrow, as defined under RESPA (if applicable), Lender shall account to Trustor for the excess funds in accordance with RESPA (if applicable). If there is a shortage of Funds held in escrow, as defined under RESPA (if applicable), Lender shall notify Trustor as required by RESPA (if applicable), and Trustor shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA (if applicable), but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA (if applicable), Lender shall notify Trustor as required by RESPA (if applicable), and Trustor shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA (if applicable), but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Trustor any Funds held by Lender.

     **4.**     **Charges; Liens.** Trustor shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Trustor shall pay them in the manner provided in Section 3.

Case: 20-05032   Doc# 1   Filed: 06/08/20   Entered: 06/08/20 22:24:24   Page 42 of
51

Trustor shall promptly discharge any lien which has priority over this Security Instrument unless Trustor: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Trustor is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Trustor a notice identifying the lien. Within 10 days of the date on which that notice is given, Trustor shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Trustor to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5.     Property Insurance.**  Trustor shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance.  This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires.  What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Trustor subject to Lender's right to disapprove Trustor's choice, which right shall not be exercised unreasonably. Lender may require Trustor to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remapping or similar changes occur which reasonably might affect such determination or certification.  Trustor shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Trustor.

If Trustor fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Trustor's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Trustor, Trustor's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.  Trustor acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Trustor could have obtained.  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Trustor secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Trustor requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Trustor further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Trustor shall promptly give to Lender all receipts of paid premiums and renewal notices. If Trustor obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Trustor further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Trustor shall give prompt notice to the insurance carrier and Lender.  Lender may make proof of loss if not made promptly by Trustor.  Unless Lender and Trustor otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Trustor any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Trustor shall not be paid out of the insurance proceeds and shall be the sole obligation of Trustor. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Trustor. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Trustor abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Trustor does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle

Case: 20-05032     Doc# 1     Filed: 06/08/20     Entered: 06/08/20 22:24:24     Page 43 of 51

a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Trustor hereby assigns to Lender (a) Trustor's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Trustor's rights (other than the right to any refund of unearned premiums paid by Trustor) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6.** **[RESERVED]**

**7.** **Preservation, Maintenance and Protection of the Property; Inspections.** Trustor shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Trustor is residing in the Property, Trustor shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Trustor shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Trustor shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Trustor is not relieved of Trustor's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Trustor notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8.** **Trustor's Financial Information.** Trustor shall be in default if, during the Loan application process, Trustor or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan.

**9.** **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Trustor fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Trustor has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Trustor secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Trustor requesting payment.

If this Security Instrument is on a leasehold, Trustor shall comply with all the provisions of the lease. If Trustor acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10.** **[RESERVED]**

**11.** **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken

Case: 20-05032    Doc# 1    Filed: 06/08/20    Entered: 06/08/20 22:24:24    Page 44 of
51

promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Trustor any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Trustor. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Trustor.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Trustor and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Trustor.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Trustor and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Trustor, or if, after notice by Lender to Trustor that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Trustor fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Trustor Miscellaneous Proceeds or the party against whom Trustor has a right of action in regard to Miscellaneous Proceeds.

Trustor shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Trustor can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12.     Trustor Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Trustor or any Successors in Interest of Trustor. Lender shall not be required to commence proceedings against any Successor in Interest of Trustor or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13.     Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Trustor covenants and agrees that Trustor's obligations and liability shall be joint and several. However, any Trustor who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Trustor who assumes Trustor's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Trustor's rights and benefits under this Security Instrument. Trustor shall not be released from Trustor's obligations and liability under this Security Instrument

California – Deed of Trust – Residential – Guarantor          6 of 12
Revision Date: July 2016

unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Trustor fees for services performed in connection with Trustor's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Trustor shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Trustor which exceeded permitted limits will be refunded to Trustor. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Trustor. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Trustor's acceptance of any such refund made by direct payment to Trustor will constitute a waiver of any right of action Trustor might have arising out of such overcharge.

**15. Notices.** All notices given by Trustor or Lender in connection with this Security Instrument must be in writing. Any notice to Trustor in connection with this Security Instrument shall be deemed to have been given to Trustor when mailed by first class mail or when actually delivered to Trustor's notice address if sent by other means. Notice to any one Trustor shall constitute notice to all Trustors unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Trustor has designated a substitute notice address by notice to Lender. Trustor shall promptly notify Lender of Trustor's change of address. If Lender specifies a procedure for reporting Trustor's change of address, then Trustor shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Trustor. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** The creation, perfection, priority and enforcement of the security interest created pursuant to this Security Instrument shall be governed by, and construed and interpreted in accordance with, the laws of the State of California ("Property Jurisdiction") without regard to the conflict of laws provisions of the Property Jurisdiction. The provisions of this Security Instrument relating to the obligations secured hereby or to any agreement, instrument or document giving rise to the obligations secured hereby shall be governed by and construed and interpreted in accordance with, the governing law of the Note. Nothing in this Security Instrument shall be construed or interpreted to provide that any other agreement, instrument or document shall be governed by the laws of the Property Jurisdiction. Trustor (a) agrees that any suit, action or proceeding arising out of or relating to this Security Instrument may be brought in a court of record in Santa Clara County, State of California or in the courts of the United States of America located in said county, (b) consents to the jurisdiction of each such court in any such suit, action or proceeding, (c) waives any objection to the laying of venue of any such suit, action or proceeding in any such court, (d) waives any claim that any such suit, action or proceeding has been brought in an inconvenient forum, (e) waives any other venue to which it might be entitled for any such suit, action or proceeding by virtue of citizenship, domicile, habitual residence or otherwise, (f) consents to the service of any process in any such suit, action or proceeding at its address provided herein, and (g) agrees that nothing in this Security Instrument waives the Lender's choice of venue under any other agreement, instrument or document. Nothing in this Security Instrument shall prevent Lender from bringing any suit, action or proceeding, enforcing any award or judgment, or exercising any right or remedy against Borrower, or against any security or collateral for the obligations of Borrower to Lender, within any other county or state, or any other foreign or domestic jurisdiction.

Except as otherwise provided for in the immediately preceding paragraph, all rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17.    Trustor's Copy.** Trustor shall be given one copy of the Note and of this Security Instrument.

**18.    Transfer of the Property or a Beneficial Interest in Trustor.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Trustor at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Trustor is not a natural person and a beneficial interest in Trustor is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Trustor notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Trustor must pay all sums secured by this Security Instrument. If Trustor fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Trustor.

**19.    Trustor's Right to Reinstate After Acceleration.** If Trustor meets certain conditions, Trustor shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Trustor's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Trustor: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Trustor's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Trustor pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Trustor, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20.    Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Trustor. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Trustor will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information required by applicable law in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Trustor will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Trustor nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Trustor or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Trustor pursuant to Section 22 and the notice of acceleration given to Trustor pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21.    Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental

California – Deed of Trust – Residential – Guarantor          8 of 12
Revision Date: July 2016

Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Trustor shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Trustor shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Trustor shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Trustor has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Trustor learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Trustor shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Trustor and Lender further covenant and agree as follows:

**22.     Acceleration; Remedies. Lender shall give notice to Trustor prior to acceleration following Trustor's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Trustor, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Trustor of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Trustor to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Trustor and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Trustor, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23.     Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24.     Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder

Case: 20-05032   Doc# 1   Filed: 06/08/20   Entered: 06/08/20 22:24:24   Page 48 of 51

of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Trustor, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

    **25.**    **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

    BY SIGNING BELOW, Trustor accepts and agrees to the terms and covenants contained in this Security Instrument executed by Trustor.

**Trustor**: Jeffrey G. Draeger a/k/a Jeffrey George Draeger

X _____

California – Deed of Trust – Residential – Guarantor     10 of 12
Revision Date: July 2016

**California All-Purpose Acknowledgment**                         **Civil Code § 1189**

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                         )
County of _Alameda_                         )

On _Feb. 11, 2019_ , before me, _____**Nina Wade, Notary Public**_____ , personally appeared
     *Date*                                   *Name and Title of Officer*

_Jeffrey G. Draeger_____ who proved to me on the basis of
satisfactory
          *Name(s) of Signer(s)*

evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that

he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the

instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

**NINA WADE**
**COMM. #2192141**
**Notary Public - California**
**Alameda County**
**My Comm. Expires Apr. 16, 2021**

Signature: _Nina Wade_____
          *Signature of Notary Public*

*Place Notary Seal Above*

## EXHIBIT A

### Legal Description

**Parcel 1:**

Real property in the City of San Jose, County of Santa Clara, State of California, described as follows:

LOT 25, "TRACT NO. 1840 VISTA GRANDE HEIGHTS UNIT NO. 2", FILED ON MAY 31, 1957 IN BOOK 81 OF MAPS, AT PAGE(S) 48 AND 49, SANTA CLARA COUNTY RECORDS.

APN: 595-01-110

**Commonly Known As: 1017 Vista Del Mar, San Jose, CA 95132**

**Parcel 2:**

Real property in the City of San Jose, County of Santa Clara, State of California, described as follows:

ALL OF LOT 4 IN BLOCK 3, AS SHOWN UPON THAT CERTAIN MAP ENTITLED, "MAP OF MT. HAMILTON VIEW PARK", WHICH MAP WAS FILED FOR RECORD IN THE OFFICE OF THE RECORDER OF THE COUNTY OF SANTA CLARA, STATE OF CALIFORNIA, ON NOVEMBER 26, 1923 IN BOOK R OF MAPS, AT PAGE 49.

APN: 481-01-049

**Commonly Known As: 136 N. 31st Street, San Jose, CA 95116**

**Parcel 3:**

Real property in the City of San Jose, County of Santa Clara, State of California, described as follows:

BEGINNING AT A POINT ON THE WESTERLY LINE OF ELEVENTH STREET, A DISTANCE THEREON NORTHERLY 298.165 FEET FROM THE POINT OF INTERSECTION OF THE WESTERLY LINE OF ELEVENTH STREET WITH THE NORTHERLY LINE OF WASHINGTON STREET; THENCE NORTHERLY 46.415 FEET TO THE NORTHERLY LINE OF LOT 20 IN BLOCK 8 OF DIVINE SURVEY NO. 1; THENCE AT RIGHT ANGLES WESTERLY ALONG SAID NORTHERLY LINE OF LOT 20, 137.83 FEET TO COMMON CORNER OF LOTS 6, 19, 5 AND 20 IN SAID BLOCK 8; THENCE SOUTHERLY ALONG THE DIVIDING LINE BETWEEN LOTS 5 AND 20, IN SAID BLOCK 46.415 FEET; THENCE AT RIGHT ANGLES EASTERLY 137.83 FEET TO POINT OF BEGINNING AT BEING A PORTION OF LOT 20 IN BLOCK 8, AS DESIGNATED ON MAP ENTITLED "DIVINE SURVEY NO. 1", WHICH SAID MAP WAS RECORDED IN THE OFFICE OF THE COUNTY RECORDER OF THE COUNTY OF SANTA CLARA, STATE OF CALIFORNIA, ON DECEMBER 2, 1868 IN BOOK "A" OF MAPS, PAGE 44, RECORDS OF SAID COUNTY.

APN: 249-51-055

**Commonly Known As: 439 N. 11th Street, San Jose, CA 95116**